UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL HERRERA,<br><br>   Plaintiff,<br><br>   v.<br><br>NEFF RENTAL, LLC, *et al*.,<br><br>   Defendants. | Case No. 14-cv-02295-SI<br><br>**ORDER GRANTING THIRD-PARTY PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; AND SETTING FURTHER CASE MANAGEMENT CONFERENCE**<br><br>Re: Dkt. No. 55 |

On September 4, 2015, the Court heard argument on Neff Rental, LLC's motion for partial summary judgment on its third-party complaint against Marine Terminals Corporation, d.b.a. Ports America. For the reasons set forth below, the Court hereby GRANTS Neff's motion for partial summary judgment. In addition, the Court schedules a further Case Management Conference for October 30, 2015 at 3:00 p.m.

**BACKGROUND**

Plaintiff Michael Herrera suffered several personal injuries while operating a payloader at work on August 20, 2013. First Amend. Compl. ("FAC," Dkt. 12) ¶¶ 6-7. At the time of his injuries, plaintiff was employed as a stevedore by Marine Terminals Corporation, d.b.a. Ports America ("Ports"). *Id.* ¶ 4. The subject payloader was rented to Ports by Neff Rental, LLC ("Neff") pursuant to a written Rental Agreement. Third-Party Compl. ("3PC," Dkt. 46) ¶ 11.

Plaintiff brought suit against Neff alleging that Neff was negligent in its maintenance of its equipment and that it negligently leased to Ports equipment it knew to be unsafe or improperly maintained. FAC ¶¶ 10-11. In a letter dated July 7, 2014, Neff tendered its defense and indemnity of this lawsuit to Ports, pursuant to a defense and indemnity provision contained in the Rental Agreement. On August 20, 2014, Ports rejected the request. 3PC, ¶¶ 14-17. Neff subsequently filed a third-party complaint against Ports asserting that Ports has an immediate and continuing duty to defend Neff pursuant to the defense and indemnity provision in the Rental Agreement. 3PC ¶ 17.

Under the customer signature box, the Rental Agreement states in small print that there are "Terms and Conditions on the other side." Dkt. 61-1. Section 8 of the Terms and Conditions, which is the defense and indemnity provision, is in very small print on the reverse side of the Rental Agreement. It reads:

> Customer shall defend, indemnify and hold harmless Lessor, its subsidiary, and affiliated companies, their officers, agents, and employees, from and against all loss, liability, claim, action or expense including reasonable attorneys fees by reason of bodily injury including death, and property damages, sustained by any person or persons, including but not limited to employees of Customer [as] a result of the maintenance, ownership, use, operation, storage erection, dismantling, servicing or transportation of Equipment, or Customer's failure to comply with the terms of this agreement.

Dkt. 61-2.

In his declaration, Ports' Site Manager Karanjit Aulakh states that upon delivery of the payloader on March 7, 2012, he was presented with the Rental Agreement by a Neff delivery employee, who requested his signature to indicate that Ports was agreeing to receive the equipment "as is." Decl. of Aulakh ¶ 3, (Dkt. 57-2). In his declaration, Aulakh states this "was the first time [he] had ever done any business with Neff Rental on behalf of Ports America." *Id.* ¶ 2. Aulakh states that he signed the Rental Agreement but was not told there were terms and conditions on the back, nor was he asked to read them. *Id.* ¶¶ 4-5.

Neff's Store Manager in Sacramento, Larry Wilson, states in his supplemental declaration that:

2

> Neff's business practice is to rent its payloaders and other equipment to Ports America on a month-to-month basis. At the end of each 28-day billing cycle, Neff automatically generates an Invoice entitled "4 Week Bill," which is mailed to Ports America. The front side of the Invoice looks similar to the front side of the Rental Out Agreement, and the reverse side contains Neff's Terms and Conditions. Neff sent Ports America 19 Invoices, which included Neff's Terms and Conditions on the reverse, between the date that Mr. Aulakh signed the original Rental Out agreement and the date of Plaintiff Herrera's alleged accident on August 20, 2013.

Suppl. Decl. of Wilson ¶ 4, (Dk. 61). He also states that he is aware of several other competitor companies in the Bay Area who offer similar equipment for rental. *Id.* ¶ 5.

The pending motion is for partial summary judgment only. Neff seeks an order that Ports is under an "immediate and continuing duty to defend Neff," pursuant to the terms of the Rental Agreement.

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the nonmoving party will have the burden of proof at trial. *Id.* at 325. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id.*

Once the moving party has met its burden, the burden shifts to the nonmoving party to "set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex*, 477 U.S. at 324). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the

3

jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id.* However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

**DISCUSSION**

Neff contends that Ports has an immediate and continuing duty to defend Neff pursuant to the defense and indemnity provision in the Rental Agreement that Ports signed in order to lease the payloader that plaintiff was using at the time of his injury.[1]

In its opposition to summary judgment, Ports does not dispute that if the defense and indemnity provision is enforceable, Ports has an immediate duty to defend Neff against Herrera's claims. Instead, Ports contends that the contract is unenforceable because the defense and indemnity provision is unconscionable. Ports argues that the contract is a contract of adhesion and that the defense provision was not within Ports' reasonable expectations.[2]

---

[1] Although not a party to the contract, plaintiff Herrera asks the Court to construe the indemnity provision narrowly and notes a possible conflict of interest between Ports, Ports Insurance Company, Inc. ["PIC"], and counsel, Max Kelley. Dkt. 59 at 4-5. Herrera questions Ports' incentive to defend Neff regarding Neff's negligence and its effect on plaintiff's ability to receive compensation for his injuries if Ports is required to indemnify Neff. *Id.* at 1-2. However, the present motion only concerns, and the Court only addresses, Ports' duty to defend. At the hearing, Herrera admitted that the indemnification issues are irrelevant to whether Ports has a duty to defend. Issues of indemnity and negligence have not been raised in Neff's motion, and the Court does not make any findings regarding those issues.

[2] Ports' opposition brief raised two additional arguments against summary judgment. First, Ports asserted that there may be an additional contract between Neff and Ports that governs the equipment rental. At the hearing, Ports' counsel stated that there was no additional written contract, but that a former Ports employee might have information about an oral agreement regarding the rental of the payloader. However, Ports had been unable to reach the former

4

Unconscionability is a question of law for the Court to determine. *Marin Storage & Trucking, Inc. v. Benco Contracting and Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1055 (2001). The California Supreme Court has approved two approaches to determining unconscionability. *Id.* at 1053 (citing *Armendariz v. Found. Health Psychcare Services, Inc.*, 24 Cal. 4th 83, 113-14 (2000)). The framework in *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486-87 (1982), provides that in order to find a contract unenforceable due to unconscionability, it must be both procedurally unconscionable and substantively unconscionable. Alternatively, the court's approach in *Graham v. Scissor-Tail, Inc.*, 28 Cal. 3d 807, 817-20 (1981), asks if the contract or provision falls outside of the reasonable expectations of the weaker party. Although there are two approaches, the California Supreme Court noted that they should lead to the same result. *See Perdue v. Crocker Nat'l Bank*, 38 Cal. 3d 913, 925 n.9 (1985).

The Court finds under both the *A & M* and the *Graham* approaches, the defense provision is not unconscionable and is therefore enforceable.

### I.    Unconscionability Under the *A & M* Framework

In order to find a contract unenforceable due to unconscionability, the contract terms must be both procedurally and substantively unconscionable. *Marin*, 89 Cal. App. 4th at 1052 (citing *A & M Produce Co.*, 135 Cal. App. 3d at 487). However, "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz*, 24 Cal. 4th at 115.

#### A.    Procedural Unconscionability

Ports argues that the Rental Agreement was a contract of adhesion because Ports' Site Manager Aulakh, who signed the Rental Agreement, was doing business with Neff for the first

---

employee, and there is at this point no evidence before the Court of an additional contract governing the rental of the payloader.

Second, Ports' opposition also objected that the copy of the Rental Agreement provided with Neff's motion was illegible and thus its terms were "fatally uncertain." Dkt. 57 at 5. Neff provided a clear and legible copy of the Rental Agreement with the reply brief, thus addressing Ports' objections.

5

time, he was told the Rental Agreement was an indication that the payloader was being received "as-is," he was never told there were terms and conditions on the back or whether they were negotiable, and he was not asked to read the terms and conditions.

Procedural unconscionability requires "oppression" or "surprise." *Marin*, 89 Cal. App. 4th at 1052. "'Oppression' arises from an inequality of bargaining power which results in no real negotiation and 'an absence of meaningful choice.' . . . 'Surprise' involves the extent to which the supposedly agreed-upon terms . . . are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms." *A & M Produce Co.*, 135 Cal. App. 3d at 486 (internal citations omitted).

In *Marin*, the trial court held a bench trial and found that an indemnification clause in the parties' contract was unenforceable because the clause was procedurally unconscionable. 89 Cal. App. 4th at 1048. The appellate court agreed with the trial court's conclusion that the agreement was a contract of adhesion and was procedurally unconscionable. *Id.* at 1054. However, "the [trial] court overlooked the principle that the elements of procedural and substantive unconscionability must both be present before a court may refuse to enforce a contract." *Marin*, 89 Cal. App. 4th at 1054. The *Marin* court ultimately found the contract enforceable because the substantive unconscionability element was not satisfied. *Id.* at 1055.

The appellate court in *Marin* analyzed an invoice titled, "Work Authorization and Contract." *Id.* at 1047. At the bottom of the form, above the customer's signature line, read the following: "This is a contract which includes all terms and conditions stated on the reverse side." *Id.* The reverse side had ten numbered paragraphs, three of which involved indemnification; two of them were at issue before the court. *Id.* Paragraph 3 provided:

> If this Agreement involves the performance of work for Lessee/Customer on Lessee/Customer's premises, Lessee/Customer agrees to indemnify [Lessor] against all loss, expense, claims and liability of any nature resulting from injury or damage to person(s) or property caused by or arising from performance of such work.

*Id.* Paragraph 6 provided:

> Lessee/Customer agrees to pay reasonable attorney's fees and court costs if legal action is taken for collection of any rental or other sums due, or for collection of loss, damage or injury to the leased equipment or person(s) or property involving

such equipment where such loss, damage or injury was, directly or indirectly, caused by Lessee/Customer.

*Id.* The forms were signed by two individual employees of the defendant: the jobsite superintendent and the carpenter foreman (the latter of whom had never signed the forms before). *Id.* at 1048. The plaintiff and defendant had entered into dozens of short-term contracts with each other using forms that had identical indemnity provisions. *Id.* at 1047.

The appellate court in *Marin* found no error in the trial court's conclusion that the document was a contract of adhesion and was therefore procedurally unconscionable. *Id.* at 1054. The trial court premised its finding on the following:

> [N]o principal of [the defendant] ever executed any of the forms, nor is there any evidence of any negotiations whatsoever. And while exhibit A describes itself as a "Work Authorization and Contract," it is more obviously an invoice for work performed than a contract. The reverse side of exhibit A is difficult to read and is presented for signature on the job site with no reasonable opportunity to read or consider the terms. It is apparent no negotiation of terms was anticipated.

*Marin*, 89 at Cal. App. 4th at 1053-54. However, the appellate court noted that these facts supported only a limited degree of procedural unconscionability. *Id.* at 1056. ("[T]he procedural unconscionability, although extant, was not great. [The defendant] was a sophisticated contractor which had been doing business with [the plaintiff] since 1985. There were other firms offering the same crane services in the Bay Area, and in fact [the defendant] has been doing business with at least 10 other firms. Hence, there was no evidence that [the defendant] had no meaningful choice other than to rent the crane from [the plaintiff]. Through the years, [the defendant] had been a signatory to dozens of Work Authorization and Contract forms and had ample opportunity to examine the reverse side and the terms printed thereon. The indemnification clause was not disguised or hidden in any respect.").

The Court finds that the Rental Agreement is procedurally unconscionable. The facts before the Court are very similar to those presented in *Marin*. First, like the carpenter foreman in *Marin*, the Ports employee who signed the Rental Agreement had never dealt with Neff before. Second, the Rental Agreement appears to be a form contract because it was the "everyday rental contract that every customer would get," which indicates that there was likely no negotiation over the terms of the Rental Agreement. Third, Aulakh states that he was never told to, nor did he, read

7

1  the terms on the back of the Rental Agreement. Although the first copy of the Rental Agreement
2  was difficult to read like in *Marin*, the court has since been provided with a better copy of the
3  original document in Neff's reply.

4  All of the above factors lead to the conclusion that this was a contract of adhesion. There
5  may be a slightly higher degree of procedural unconscionability than in *Marin*, because Ports only
6  had one individual sign the Rental Agreement, whereas in *Marin*, at least two individuals had
7  signed the form. Moreover, the Rental Agreement is labeled "Rental Out" and does not mention
8  contract anywhere on the form. However, it does say "agreement" near the bottom of the form in
9  the customer signature boxes and states that the Terms and Conditions are on the other side.

10  The Court notes that some of the same factors addressed by the *Marin* court, which cut
11  against procedural unconscionability, are present here. In his declaration in support of Neff's
12  reply, Wilson states that "Neff sent Ports America 19 Invoices, which included Neff's Terms and
13  Conditions on the reverse, between the date that Mr. Aulakh signed the original Rental Out
14  agreement (Exhibit A) and the date of Plaintiff Herrera's alleged accident" (a period of nineteen
15  months). Suppl. Decl. of Wilson ¶ 4, (Dkt. 61). Although none were signed by Ports, the fact that
16  Ports received nineteen invoices containing the defense and indemnity provision at least suggests
17  that it was put on notice of that provision. Furthermore, Wilson states that he is aware of other
18  companies that Ports could have rented the payloader equipment from, suggesting that Ports was
19  not forced into a position to do business with Neff. Suppl. Decl. of Wilson ¶ 5, (Dkt. 61). Lastly,
20  although the defense provision was on the reverse side and in small font, it was not disguised or
21  hidden.

22  On balance, the Court finds that the procedural unconscionability element is met because
23  the Rental Agreement was a contract of adhesion.

24

25  **B.      Substantive Unconscionability**

26  Ports contends that the contract is substantively unconscionable because "there is no
27  evidence that Ports America should have reasonably expected that, by accepting the subject
28  payloader for rental 'as is,' it was agreeing to defend Neff against any claims." Dkt. 57 at 11:3-6.

8

The Court disagrees and does not find the defense and indemnity provision to be substantively unconscionable.

Substantive unconscionability assesses the effects of the terms of the agreement and whether they are unreasonable. *Marin*, 89 Cal. App. 4th at 1052. "Because a contract is largely an allocation of risks, a contractual provision is 'substantively suspect if it reallocates the risks . . . in an objectively unreasonable or unexpected manner.'" *Id.* (citing *A & M Produce Co.*, 135 Cal. App. 3d at 486). A finding of substantive unconscionability requires the contract terms "shock the conscience." *Cal. Grocers Assn. v. Bank of Am.*, 22 Cal. App. 4th 205, 214 (1994); *see also Am. Software Inc. v. Ali,* 46 Cal. App. 4th 1386, 1391 ("With a concept as nebulous as 'unconscionability' it is important that courts not be thrust in the paternalistic role of intervening to change contractual terms that the parties have agreed to merely because the court believes the terms are unreasonable. The terms must shock the conscience.").

In *Marin*, the court did not find the indemnification clause to be substantively unconscionable. 89 Cal. App. 4th at 1056. ("We cannot say that the indemnification was so unreasonable, unjustified, or one-sided as to shock the conscience."). The court noted that in leasing a crane, there was obvious risk to both parties and as well as risk of injury to third parties. *Id.* Within a commercial context, there was nothing so inherently unfair about reallocating risk as to shock the conscience where the rented out equipment was used on the customer's premises, in the customer's control, or where the injury was caused by the customer. *Id*. The low degree of procedural unconscionability further supported the appellate court's conclusion. *Id.* The court held that a greater degree of substantive unfairness than was shown was required to support a finding of substantive unconscionability. *Id.*

As discussed above, the degree of procedural unconscionability here is only slightly higher than in *Marin.* Accordingly, there needs to be a high degree of unfairness to find substantive unconscionability. As in *Marin*, the leasing of a payloader involves significant risk to Neff, Ports, and other third parties (such as the plaintiff, Herrera). The terms of the indemnity provision indicate that the duty to defend triggers from "the maintenance, ownership, use, operation, storage, erection, dismantling, servicing or transportation of *Equipment* . . . ." Dkt. 61-2 (emphasis added).

1  The provision is not a catch-all for any claims against Neff, but rather, only for the limited
2  categories listed involving the Equipment. Like the plaintiff in *Marin*, Neff sought to limit its
3  liability by providing for indemnification when the payloader was used on Ports' premises or
4  where Ports had control over the payloader. Similar to the court's reasoning in *Marin*, this Court
5  does not find anything inherently unfair about reallocation of this risk as to shock the conscience.
6  Thus, the substantive unconscionability element is not met.

7  Therefore, under the *A & M* framework, this Court finds that Ports has not shown that the
8  Rental Agreement is substantively unconscionable.

## II. Unconscionability under the *Graham* Framework

A contract of adhesion is unenforceable if the contract or provisions fall outside of the reasonable expectations of the weaker party. *Graham*, 28 Cal. 3d at 820. Further, even if the contract terms fall within reasonable expectations, the contract may still be unenforceable if the terms are unduly oppressive or unconscionable. *Id.*

The trial court in *Marin* found the contract unenforceable under the *Graham* framework because there was inadequate notice of the terms which altered the weaker party's expectations. *Marin*, 89 Cal. App. 4th at 1057. The trial court relied on the fact that the contract terms were difficult to read, which gave no reasonable opportunity to read or consider the terms. *Marin*, 89 Cal. App. 4th at 1057. However, the appellate court held that this conclusion was erroneous because the trial court "made no finding that the inconspicuous nature of the indemnity clause served to frustrate the reasonable expectations of [the defendant]." *Id.* The *Marin* court concluded that although the indemnification clause was embedded in a contract of adhesion, it was still enforceable because the defendant had signed and made payments on dozens of identical contracts for over a decade and there was evidence that other companies with whom the defendant had done business had similar provisions in their contracts. *Id.*

Here, the parties had been conducting business for over nineteen months prior to the plaintiff's injury. Although the time period here is shorter than in *Marin*, the fact that Ports has received from Neff monthly invoices that it has made payments on suggests that Ports should have

had ample opportunity to read and take notice of the defense provision. The Court cannot conclude that the defense provision reallocating risk fell outside of Ports' expectations when they are in the stevedoring industry and where there is significant risk of injury involved, especially with heavy-duty machinery and equipment. Furthermore, the evidence does not indicate that Neff used small print in order to frustrate the reasonable expectations of Ports.

Therefore, under the *Graham* framework, this Court finds that the contract terms are not unconscionable because the defense provision does not fall outside of Ports' reasonable expectations.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS Neff's motion for partial summary judgment. **The Court schedules a further Case Management Conference for October 16, 2015 at 3:00 p.m.** At that conference, the parties should be prepared to address whether Ports and/or Neff need new or additional counsel as a consequence of the granting of this motion.

**IT IS SO ORDERED**.

Dated: September 29, 2015

_____
SUSAN ILLSTON
United States District Judge